**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DEBRA KAY HEWITT,**

                **Plaintiff,**

**-vs-**                                                                            **Case No. 6:15-cv-241-Orl-DAB**

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security,**

                **Defendant.**
_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and the matter is **REMANDED** for additional findings.

## Procedural History

Plaintiff applied for benefits, alleging that she became unable to work on August 1, 2004 (R.196-97, 211). The agency denied Plaintiff's application initially and upon reconsideration, and she requested and received a hearing before an administrative law judge ("the ALJ"). On May 30, 2013, the ALJ issued an unfavorable decision, finding Plaintiff to be not disabled through December 31, 2009, her date last insured (R. 23-34). Plaintiff presented additional evidence to the Appeals Council, but it declined to grant review (R. 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint (Doc. 1), the parties consented to the jurisdiction of the undersigned United States Magistrate Judge, and the matter is fully briefed and ripe for review pursuant to 42 U.S.C. §405(g).

## Nature of Claimed Disability

Plaintiff claims to be disabled due to pain and residuals from osteoarthritis of knees and back; Epstein Barr disease; Sjogrens disease; severe spinal stenosis; degenerative disc disease; white matter disease of the brain; stage 2 kidney disease; hypothyroidism; hypertension; coronary heart disease; mitral valve prolapse; hyperlipidemia; and blood clots (R. 214).

*Summary of Evidence Before the ALJ*

Plaintiff was fifty nine years old on her date last insured (R. 196), with a community college education (R. 46) and past relevant work as a patient insurance coordinator/hospital insurance clerk and licensed practical nurse (R. 48-50, 72, 75).

In the interest of privacy and brevity, the lengthy medical evidence relating to the pertinent time period will not be repeated here, except as necessary to address Plaintiff's objections. In addition to the medical records of the treating providers, the record includes Plaintiff's testimony and that of a Vocational Expert, written forms and reports completed by Plaintiff, and opinions from non-examining state agency consultants. By way of summary, the ALJ determined that: "Through the date last insured, the claimant had the following severe combination of impairments: hypertension, kidney disease, neurological disorder/vestibular/hearing, osteoarthritis and degenerative joint disease in both knee[s] and degenerative disc disease (20 CFR 404.1520(c))" (R. 28), and Plaintiff does not dispute this finding. The ALJ next determined that, through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) (R. 30). The ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to: "perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, or scaffolding. The claimant should also avoid concentrated exposure to

unprotected heights or dangerous moving machinery" (R. 30). The ALJ determined that, through the date last insured, the claimant was capable of performing past relevant work as a hospital insurance clerk (R. 33) and was, therefore, not under a disability at any time from August 1, 2004, through December 31, 2009 (R. 34).

## Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## Issues and Analysis

Plaintiff contends that 1) the Appeals Council erred in failing to review the case for consideration of new and material evidence; and 2) the RFC for light work is not based on substantial evidence, fails to give proper weight to the opinions of the treating physician, and violates SSR 96-2p. The Court reviews the objections in the context of the sequential assessment used by the ALJ.

*The five step assessment*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). As the application was decided at step four, the burden was with Plaintiff at all relevant times.

*Weighing the Opinion of Treating Physicians*

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social*

*Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).)  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997)*; Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

As set forth in the briefs, there are a variety of records from Plaintiff's treating providers that pertain to the pertinent time period.[1] Several of Plaintiff's specialists noted particular limitations and provided opinions (sometimes, many years later) that Plaintiff's reduced functionality amounts to disability. Among the many records and opinions are:

a) a November 3, 2005 treatment note from orthopedic surgeon Daniel King, M.D. (R. 1783-86), assessing Plaintiff with moderate to severe degenerative joint disease of both knees, based on MRI and examination findings, and opining that Plaintiff "will likely need knee replacement surgery at some point in the future" (R. 1783);

b) Dr. King's February 2012 opinion, which notes that it "pertains to [claimant] on or before 12-31-09," and sets forth marked limitations in function arising from the bilateral knee impairment (R. 1955-61);

c) A November 5, 2004 finding of a "significant unilateral weakness on the right side" diagnosed by objective testing after Plaintiff hit her head on a marble counter and complained of dizziness and balance issues (R. 1994). On December 5, 2004, neurologist Richard P. Newman performed a videonystagnography and opined Plaintiff "probably had a vestibular injury from which she is symptomatic" (R. 2004). Noting that "[t]here is evidence of significant peripheral vestibular dysfunction," Dr. Newman opined: "It is likely at this time to be a permanent impairment" (R. 2006). In June 2006, Dr. Newman saw Plaintiff and opined that "her vestibular problems haven't changed." (R. 2024).

d) Testing and a June 20, 2005 diagnosis from Dr. James Atkins, a specialist at Florida Ear & Balance Center, of vestibulopathy (R. 1951). Later notes considered by the ALJ showed a gait abnormality (R. 1987) and a conclusion by Dr. Atkins that "she is still disabled by the dizziness." (R. 1987-1988).

---

[1] There are also records which pre and post-date the relevant time period and are not at issue here.

The record includes many other examination findings and opinions, as well. The ALJ discussed some of these findings in the context of evaluating Plaintiff's credibility, noting:

> One treatment provider observed, "There certainly may be a component of anxiety to many of her symptoms that she is having and could consider treatment with SSRI based on her lab results." (Ex. 4F at 203). Another treatment provider lamented, "It is my opinion this woman needs to stop seeking multiple specialists in various parts of our great state and concentrate on improving her quality of life and going back to being productive, being able to exercise and stop focusing on meaningless laboratory results ordered in the past." (Ex. 4F at 86). It was subsequently noted by yet another treatment provider that the claimant's "cognitive impairment is most likely secondary to pseudodementia" and at least some of her other symptoms are "most likely secondary to somatization disorder." (Ex. l 1F at 7-8). As such, treatment providers recommended anxiety medication on several occasions to alleviate various reported symptoms. (Ex. 4F at 74, 82, 170, 203, 22F at 18-20).

(R. 31).

In her decision, the ALJ acknowledged the combination of severe impairments but did not credit any opinion of disabling limitations, giving some weight only to the opinion of the state agency non-examining medical consultant (R. 32). The ALJ explained:

> Furthermore, **the opinion evidence is consistent with the extent of limitations included in the residual functional capacity**. The undersigned gives some weight to the opinion of the State agency medical consultant who reviewed the evidence at the reconsideration level. (Ex. 3A). The medical consultant concluded that the claimant should be limited to light work with no other restrictions. (Ex. 3A). State agency medical consultants are specifically empowered to make judgments regarding whether a person has the severity of symptoms required either singly or in combination to meet or equal any conditions found under the medical listings (see 20 CFR 404.1527(i)(l)). The undersigned finds nothing of record to contradict the State agency medical consultant's opinions herein that the claimant does not meet or equal a medical listing. The residual functional capacity assessed by the State agency medical consultants is reasonable and consistent with the objective medical evidence.
>
> By contrast, **the undersigned gives little weight to the opinions of the claimant's treatment providers**. For instance, Dr. Edward Bittar provided an opinion regarding maximal medical improvement of both knees in which he assessed a whole person impairment of 20%. (Exs. 5F at 17, 4F at 282, 25F). However, this opinion predates the alleged onset date by approximately six years and the claimant was able to maintain work near or above SGA levels for several years following this assessment. (Exs. 2D, 4D, SD). For similar reasons, the undersigned also gives little weight to the fact that Dr. Bittar gave the claimant an application for disabled parking in 2001. (Ex. 4F at 256).

> Likewise, years after the date last insured, the claimant obtained statements from her treatment providers to validate her alleged disability. (Exs. 15F, 16F, 17F at 11, 19F, 20F, 24F). Several of these opinions are quite conclusory, providing very little explanation of the evidence relied upon in forming the opinion, perhaps because the assessments are inconsistent with the medical evidence. (Exs. 19F, 20F, 24F). Even the more detailed statements asserting disability are inconsistent with the medical evidence and the conservative course of treatment recommended. (Exs. 15F, 16F, 17F at 11). The treatment providers apparently relied quite heavily upon the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Furthermore, the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality, which should be mentioned, is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy a patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

(R. 32, emphasis added).

Initially, as is clear, the opinion evidence from Drs. King, Atkins and Newman is *not* "consistent with" the RFC. Indeed, if it was, there would be no need to "give little weight" to the opinions of these treating specialists. Notwithstanding this inherent contradiction, it appears that the ALJ has credited the opinion of the state agency consultant and has discounted the opinions of Drs. King, Atkins and Newman. The Court finds that, on the facts presented here, the stated rationale for doing so is not sufficient to comply with *Winschel* and the above standards.

Rather than stating "with particularity" the weight given to each provider's opinion and the reasons therefor, the ALJ lumps all of the treating providers together and, save for Dr. Bittar, does not provide any detailed discussion of any of the opinions (or even mention the physicians by name). Instead of evaluating the opinions in accordance with the factors set forth in 20 C.F.R. § 404.1527(d), the ALJ appears to simply reject *all* of the findings and opinions as being conclusory, inconsistent with the medical evidence and conservative course of treatment, or the product of an inappropriate

-8-

reliance on subjective symptoms. While such a determination can be affirmed in an appropriate case, such a general finding is not adequately explained here. Absent that explanation, the Court cannot determine whether the finding is supported by substantial evidence.

This is especially so, given the nature of the impairments. Dr. King's assessment of disabling degenerative joint disease of both knees, for example, is supported by laboratory findings (including x-rays and MRIs), and clinical findings of reduced range of motion, crepitus and pain. The opinion is not wholly conclusory and cannot be said to be the result of a mere subjective complaint or somatization. While the records and findings of Plaintiff's prior orthopedist (Dr. Bittar) do, indeed, predate the alleged onset, Dr. King's records are within the applicable time period and show that Plaintiff's knee impairment was still significant.

The findings with respect to Plaintiff's neurological and vestibular disorder, too, are supported by objective test results and examinations of specialists in the field. In a case like this, where the nature of the impairment is, by definition, subjective (dizziness and balance issues), a specialist's reliance on the report of the symptom when coupled with objective testing results is not "inappropriate." Nor is the Court persuaded that the opinions of other providers regarding Plaintiff's anxiety is necessarily inconsistent with a vestibular impairment.

The ALJ also notes that, on some occasions, doctors may provide favorable conclusions to placate insistent patients. While this observation may be accurate in some circumstances, the ALJ points to nothing in this record that supports a finding that such happened here. Generalized comments about human nature are no substitute for the analysis mandated by *Winschel.*

Looking solely to the record as it existed at the time of the ALJ's decision, the Court cannot find that the explanation provided for discounting all of the opinions of the treating providers is supported by substantial evidence identified sufficiently for the Court to perform the required review. This conclusion is reinforced by the additional evidence submitted to the Appeals Council.

*The Appeals Council*

> The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council. When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007).

Here, Plaintiff submitted additional records and opinions from her treating providers (R. 5). In considering the additional evidence, the Appeals Council stated:

> We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.
>
> We also looked at records from Daniel King, M.D., covering the period June 23, 2011 through May 10, 2012 (3 pages). The Administrative Law Judge decided your case through December 31, 2009, the date you were last insured for disability benefits. This new information is about a later time. Therefore. it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

(R. 2).

As set forth by the Commissioner in her brief, some of the information submitted to the Appeals Council was not, in fact, "new" but duplicates information already before the ALJ.[2] Further, the additional evidence includes records that substantially pre-date Plaintiff's alleged onset or post-date the date last insured. The Court agrees with the Commissioner that this evidence is not shown to be relevant to the time at issue here. The Court does, however, find that the new evidence from Dr. Atkins (Exhibits 35F and 37F) and Dr. Newman (Exhibit 36F) reinforces the conclusion that remand for additional consideration and a more particularized explanation of the weight given to the opinion of these two physicians is appropriate.

---

[2]Exhibit 34F, Records from Daniel King, M.D. from November 5, 2004 through November 3, 2005, were included in the record before the ALJ (R. 1783-86). Some of the records from Dr. Bittar are also cumulative.

-10-

On July 3, 2013, well after the date last insured, Dr. Atkins completed a Dizziness Medical Source Statement (R. 2134-2137), opining, among other findings, that Plaintiff was incapable of work, due to her "constant" dizziness. In a letter dated July 31, 2013, Dr. Atkins, a board certified specialist in ear and balance disorders, noted that Plaintiff "experienced a significant blow to the head and concussion in 2004" and "*[s]ince that time* she's had persistent complaints of lightheadedness, dizziness and instability. Her vestibular testing has shown a 30% loss of function on the right vestibular system. She's had an abnormal MRI of the brain. She has not responded to any medications or therapy." (R. 2142, emphasis added). Dr. Atkins opined that Plaintiff had numerous and specific limitations and symptomology resulting from this injury. *Id.* Although the Commissioner argues that this opinion is "similar" to Dr. Atkins' earlier opinion already considered and rejected by the ALJ, the Court disagrees. As shown above, the reasons articulated by the ALJ for rejecting Dr. Atkins' opinion that Plaintiff was disabled by her dizziness were that the opinion was conclusory, inconsistent with the medical evidence and conservative course of treatment, or the product of an inappropriate reliance on subjective symptoms. The additional information provided here is far more detailed than a notation that Plaintiff is "disabled by dizziness" and does not fit the ALJ's general description of reasons to discount it.

The Court also rejects the Commissioner's contention that the updated Vestibular Disorder Medical Assessment Form completed by Richard Newman, M.D. on September 10, 2013 (R. 2138-41) is "an almost identical assessment regarding Plaintiff's vestibular disorder in 2012 (TR. 1963-66)." The earlier form was only partially completed while the updated form before the Appeals Council provided additional detail and limitations. The Court finds the lack of specific discussion regarding Plaintiff's acknowledged vestibular impairment and the specialists' opinions regarding the functional limitations arising from the impairment is sufficient to render the ALJ's opinion incomplete and therefore erroneous. Remand is warranted for additional consideration and findings by the ALJ.

To be clear, the Court is not finding that Plaintiff is disabled nor that the record is devoid of evidence that could support discounting these opinions. Rather, in keeping with the Court's obligation to view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision, *Foote*, 67 F.3d at 1560, the Court finds that the explanation offered by the ALJ is too general to comport with *Winschel* and, as such, the Court cannot determine if the ALJ's weighing of the opinions is supported by substantial evidence. Upon remand, the ALJ should consider the opinions of these treating providers and provide a more specific rationale as to the weight given to the opinions, sufficient to permit the required review.[3] Although Plaintiff raises other issues, this is dispositive.

## Conclusion

As the Court finds the evaluation of the opinion evidence does not comply with the dictates of *Winschel* and the resulting finding is not supported by substantial evidence, the final administrative decision is **reversed** and the matter is **remanded under sentence four of 42 U.S.C. § 405(g)**, **for additional consideration of the opinion evidence and for further findings**. The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**DONE** and **ORDERED** in Orlando, Florida on October 28, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

---

[3] The Court recognizes that the record is lengthy and the regulations do not insist on copious findings. Nonetheless, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Commissioner of Social Sec.,* 265 F.3d 1214, 1219 (11th Cir. 2001). The Court finds the vestibular issues to fit within this holding.